# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FREDERICK WILLIAM GULLEN, on
behalf of himself and all others similarly
situated,

        *Plaintiff*,

v.

FACEBOOK, INC.,

        *Defendant*.

Civil Case No. 15 C 07681

Hon. Jorge L. Alonso

## DEFENDANT FACEBOOK, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Vincent Connelly
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
vconnelly@mayerbrown.com
mprovance@mayerbrown.com

John Nadolenco (*pro hac vice* pending)
MAYER BROWN LLP
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
aparasharami@mayerbrown.com

*Counsel for Defendant Facebook, Inc.*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A.    Facebook And Its Tag Suggestions Feature.................................................. 2

    B.    The Illinois Biometric Information Privacy Act And Plaintiff's Claim ............... 3

ARGUMENT ......................................................................................................................... 5

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER FACEBOOK................. 6

    A.    There Is No General Personal Jurisdiction Over Facebook In Illinois ................. 6

    B.    Plaintiff Has Failed To Establish Specific Personal Jurisdiction.......................... 7

II.    THE BIPA DOES NOT APPLY TO THE TAG SUGGESTIONS FEATURE................ 9

    A.    The Plain Language Of The BIPA Expressly Excludes From The Statute's
Reach Photographs And Any Information Derived From Photographs ............... 9

    B.    Collecting Information From Photographs Does Not Constitute A "Scan
Of Hand Or Face Geometry" Within The Meaning Of The BIPA ..................... 10

        1.    Liability Under The BIPA Attaches Only To Biometric Identifiers
And Information Derived From Them..................................................... 11

        2.    The Phrase "Scan Of Hand Or Face Geography" Describes An In-
Person, Physical Scan .............................................................................. 12

        3.    Plaintiff's Argument Cannot Be Squared With The Legislative
Findings And History............................................................................... 13

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
 751 F.3d 796 (7th Cir. 2014) ...........................................................................7, 8, 9

*Commodity Futures Trading Comm'n v. Worth Bullion Grp.*,
 717 F.3d 545 (7th Cir. 2013) ...................................................................................12

*Cook Assocs. v. E.G. Snyder Co.*,
 1988 WL 139258 (N.D. Ill. Dec. 22, 1988) ...........................................................6, 7

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014) ..............................................................................................1, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 131 S. Ct. 2846 (2011) ................................................................................................6

*Ind. Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*,
 347 F.3d 652 (7th Cir. 2003) .....................................................................................15

*Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n*,
 312 F.3d 833 (7th Cir. 2002) .......................................................................................8

*Jacobs/Kahan & Co. v. Marsh*,
 740 F.2d 587 (7th Cir. 1984) .......................................................................................6

*Kipp v. Ski Enter. Corp.*,
 783 F.3d 695 (7th Cir. 2015) .......................................................................................6

*Maksym v. Bd. of Election Comm'rs*,
 242 Ill. 2d 303 (2011) ................................................................................................13

*McCauley v. City of Chicago*,
 671 F.3d 611 (7th Cir. 2011) .......................................................................................5

*Mich. Ave. Nat'l Bank v. Cnty. of Cook*,
 191 Ill. 2d 493 (2000) ..........................................................................................10, 13

*People v. Diggins*,
 235 Ill. 2d 48 (2009) ..................................................................................................10

*People v. Qualls*,
 365 Ill. App. 3d 1015 (2006) .....................................................................................12

*People v. Trainor*,
 196 Ill. 2d 318 (2001) ................................................................................................11

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952) .......................................................................................................7

*S. Illinoisian v. Ill. Dep't of Pub. Health*,
    218 Ill. 2d 390 (2006) ...................................................................................................9

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) .......................................................................................................7

*Skokie Castings, Inc. v. Ill. Ins. Guar. Fund*,
    2013 IL 113873 (Ill. Oct. 18, 2013) .........................................................................14

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) .......................................................................................6

*United States v. Williams*,
    553 U.S. 285 (2008) .....................................................................................................12

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ..............................................................................................7, 8

**STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(2) ......................................................................................................6

740 ILCS 14/5(a) .........................................................................................................3, 13

740 ILCS 14/5(b) .........................................................................................................3, 14

740 ILCS 14/5(c) .........................................................................................................4, 13

740 ILCS 14/5(d) ...............................................................................................................4

740 ILCS 14/5(e) .........................................................................................................4, 13

740 ILCS 14/10 ........................................................................................................ *passim*

740 ILCS 14/15(a) .............................................................................................................5

740 ILCS 14/15(b) .............................................................................................................5

740 ILCS 14/20(1) .............................................................................................................5

740 ILCS 14/20(2) .............................................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page**

OTHER AUTHORITIES

IL H.R. Tran. 2008 Reg. Sess. No. 276 (May 30, 2008) ...........................................................4, 15

Ill. S. J., 2008 Reg. Sess. No. 167 (July 10, 2008) .......................................................................15

Senate Bill 2400, § 10 (Feb. 14, 2008) .........................................................................................14

Senate Amendment to Senate Bill 2400, § 10 (Apr. 11, 2008) .....................................................14

House Amendment to Senate Bill 2400, § 10 (May 28, 2008)......................................................14

Facebook, *Sign Up*,
   https://www.facebook.com/r.php...............................................................................................2

Facebook, *Tag Suggestions*,
   https://www.facebook.com/help/463455293673370 ...............................................................3

Nat'l Sci. and Tech. Council, Subcomm. on Biometrics, *Hand Geometry* (Aug. 7, 2006),
   http://www.biometrics.gov/documents/handgeometry.pdf ......................................................12

U.S. Customs and Border Protection, *Global Entry*,
   http://www.cbp.gov/travel/trusted-traveler-programs/global-entry .......................................13

## INTRODUCTION

This suit challenges a product feature that enables people who use Facebook to more easily tag their Facebook friends in the photos that they upload to Facebook. This feature applies to, and is available only to, people who have Facebook accounts. Plaintiff Frederick William Gullen alleges that he does *not* have a Facebook account. He nevertheless speculates that he was impacted by this feature, called "Tag Suggestions," when an unspecified third party allegedly uploaded a picture of him to Facebook and labeled it with his name.

Plaintiff asserts claims for violation of the Biometric Information Privacy Act (the "BIPA"), an Illinois statute enacted in 2008 to regulate the use of biometric technologies (such as retina scans, fingerprints, and voiceprints) in connection with financial transactions and security screenings—not photo-tagging features offered by services like Facebook. Plaintiff has no viable challenge to a feature that does not apply to people without a Facebook account. But even assuming the truth of plaintiff's allegations for purposes of this motion, the complaint should be dismissed for two reasons.

*First*, this Court lacks personal jurisdiction over Facebook. Under the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), Facebook is not subject to general jurisdiction in Illinois: it is incorporated in Delaware and headquartered in California. Nor is Facebook subject to specific jurisdiction, because plaintiff's claim does not arise from contacts between Facebook and Illinois. In fact, plaintiff goes out of his way to allege that Facebook has no relationship with him at all: he does not use Facebook's services or interact with Facebook, and his alleged injury stems from the decision of an unspecified third party to upload a photo that included plaintiff to Facebook from an unspecified location. It is well established that simply operating a website accessible from Illinois cannot support personal jurisdiction.

*Second*, even if this Court did have personal jurisdiction over Facebook, plaintiff cannot

state a claim under the BIPA as a matter of law. The BIPA applies only to "biometric identifiers" and "biometric information." 740 ILCS 14/10. The statute expressly defines those terms to *exclude* both "photographs" and any "information derived from" photographs. *Id.* Because plaintiff's claim rests entirely on information derived from photographs, his complaint should be dismissed with prejudice.

BACKGROUND

### A. Facebook And Its Tag Suggestions Feature

To use Facebook, a person must register for an account and agree to Facebook's terms of service and Data Policy. Facebook, *Sign Up*, https://www.facebook.com/r.php (last accessed Nov. 17, 2015). Over 1.5 billion people worldwide use Facebook to connect with their friends and family and share a wide variety of interesting content, including photos, with them. Facebook has long enabled people to make sharing photos a more social and personal experience through "tagging." Compl. ¶ 24. Tagging allows people to sort their uploaded photos not only by the date when they were taken or uploaded, but also by the names of the people in them. If the person who is tagged uses Facebook, the tag will include a link to that person's Facebook account. For example, someone who uploads a photo of himself and six of his Facebook friends can tag not only himself in the photo, but also his six friends. The photo (and any tags) are visible only to the audience determined by the person who uploads it.

One way in which a person can tag friends in a photo is by typing in their names manually. In 2010, Facebook started rolling out a feature called "Tag Suggestions" to make it easier for people to tag their Facebook friends in photos. *Id.* ¶¶ 21, 24. Facebook analyzes photos that are uploaded to its service by people with registered accounts, and then uses the information derived from the photos to make suggestions about which Facebook friends to tag. *Id.* ¶¶ 5, 22–24, 30 (Facebook scans "user-uploaded photo[s]" and derives from those photos

2

"geometric data" about a person's face, such as "the distances between [a person's] eyes, nose and ears."). Plaintiff alleges that the information derived from these photographs is then saved by Facebook as a "template." *Id.* ¶¶ 5, 22, 24. Plaintiff's claim rests entirely upon the information that he alleges was derived from photos uploaded to Facebook.

The foregoing description of Facebook's Tag Suggestions feature is drawn from the complaint. We note, however, that in other important respects, the complaint's description of this feature is materially incorrect. Most notably, Tag Suggestions does not apply to people without Facebook accounts. If a person who is tagged in a photo on Facebook does not have a Facebook account, Facebook does not, contrary to paragraph 24 of the complaint, save a "face template" and "corresponding name identification" in its "database." People who *do* have Facebook accounts, moreover, can choose to turn off the Tag Suggestions feature at any time, in which case Facebook will delete the "template" and no longer suggest that person in photos uploaded by his or her friends. Facebook, *Tag Suggestions*, https://www.facebook.com/help/ 463455293673370 (last accessed Nov. 17, 2015). All of that having been said, these factual inaccuracies in the complaint make no difference for purposes of this motion because, even as pleaded, plaintiff's claim fails as a matter of law. *See* pp. 5–15, *infra*.

### B.     The Illinois Biometric Information Privacy Act And Plaintiff's Claim

The BIPA is a narrowly-written law that was enacted in 2008 to address the "growing" use of biometric data "in the business and security screening sectors." 740 ILCS 14/5(a). The legislature found that "[m]ajor national corporations have selected . . . Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." *Id.* 14/5(b). It surmised that consumers were wary "of the use of biometrics when

3

such information is tied to finances," and might be "deterred from partaking in biometric identifier-facilitated transactions" without "State law regulating the collection, use, safeguarding, and storage of biometrics." *Id.* 14/5(d), (e). Of particular concern to the legislature, a company that stored fingerprint scans had filed for bankruptcy; it was unclear what would happen to the scans. IL H.R. Tran. 2008 Reg. Sess. No. 276, at 249 (May 30, 2008) (Statement of Rep. Ryg).

The BIPA addresses these concerns by regulating the collection and storage of "biometric identifiers" and "biometric information." The definitions of these terms reflect the statute's focus on "biometric-facilitated *transactions*." 740 ILCS 14/5(c) (emphasis added). "Biometric identifiers" are certain sources of data about a person. The statute provides a short, exclusive list: "'[b]iometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* 14/10. Other potential identifiers are then expressly ***excluded*** from that definition, including "writing samples, written signatures, ***photographs***, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color." *Id.* (emphasis added).

"Biometric information," in turn, is data derived from analysis of a biometric identifier: the term is defined as information "based on an individual's biometric identifier" that is "used to identify an individual." 740 ILCS 14/10. The statute expressly states that "[b]iometric information ***does not include*** information derived from items or procedures excluded under the definition of biometric identifiers"—such as photographs. *Id.* (emphasis added).

The BIPA then imposes certain obligations on private entities that (1) obtain "biometric identifiers" from people and/or (2) analyze those biometric identifiers to produce "biometric information." Such an entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information"

4

without first (1) informing the individual in writing that "a biometric identifier or biometric information is being collected or stored" and for what "specific purpose and length of term"; and (2) obtaining a "written release" from the individual. 740 ILCS 14/15(b). In addition, a "private entity in possession of biometric identifiers or biometric information" is required to develop a publicly available written policy regarding the retention and destruction of biometric identifiers and biometric information. *Id.* 14/15(a).

Plaintiff alleges that an unknown person in an unknown location uploaded a photo to Facebook that included his likeness. Compl. ¶ 29. He claims that Facebook "extracted geometric data" about his face from this photo, and saved a template containing that data in its database. *Id.* ¶ 30. Plaintiff speculates that Facebook has engaged in similar conduct with respect to other non-Facebook users in Illinois. *Id.* ¶¶ 22–25.

Plaintiff seeks to represent a putative class that consists of "[a]ll non-Facebook users who, while residing in the State of Illinois, had their biometric identifiers, including 'face templates' (or 'face prints'), collected, captured, received, or otherwise obtained by Facebook." *Id.* ¶ 37. He alleges that Facebook has violated the BIPA by failing to make the requisite disclosures to, and obtain adequate releases from, these individuals. *Id.* ¶¶ 42–51. And he requests statutory damages of either $5,000 per allegedly intentional and reckless violation (*see* 740 ILCS 14/20(2)) or $1,000 per allegedly negligent violation (*see id.* 14/20(1)); declaratory and injunctive relief; and litigation expenses and attorneys' fees. *See* Compl. at 13–14.

## ARGUMENT

Although Tag Suggestions does not apply to people, like plaintiff, who do not use its service, Facebook recognizes that at the motion to dismiss stage, the Court must "accept the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616

(7th Cir. 2011).  Even on plaintiff's erroneous version of the facts, however, his complaint must be dismissed because this Court lacks personal jurisdiction over Facebook and because plaintiff cannot state a claim under the BIPA.

## I.      THIS COURT LACKS PERSONAL JURISDICTION OVER FACEBOOK.

Plaintiff bears the burden of showing that the Court has personal jurisdiction over Facebook, and must "provid[e] specific facts," not conclusory assertions, "to support jurisdiction."  *Cook Assocs. v. E.G. Snyder Co.*, 1988 WL 139258, at *1 (N.D. Ill. Dec. 22, 1988); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).  There are two forms of personal jurisdiction: "general jurisdiction," in which a defendant is so "at home" in the forum that a court may adjudicate claims against it arising from anywhere in the world; and "specific jurisdiction," in which a court may adjudicate claims that arise out of the defendant's contacts with the forum state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  Due process does not permit this Court to exercise *either* general or specific jurisdiction over Facebook; the complaint must be dismissed.  Fed. R. Civ. P. 12(b)(2).[1]

### A.      There Is No General Personal Jurisdiction Over Facebook In Illinois.

*Daimler* "raised the bar" for establishing general personal jurisdiction.  *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015).  Under its "stringent" standard, a corporate defendant is generally subject to general jurisdiction only in "the state of [its] principal place of business and the state of its incorporation."  *Id.*  Facebook is not subject to general jurisdiction in Illinois: it is incorporated in Delaware and its principal place of business is in California.  Compl. ¶ 8.

Plaintiff alleges that Facebook's registration to do business in Illinois and its maintenance

---

[1]      "A federal district court in Illinois has personal jurisdiction over a party in a diversity case only if an Illinois court would have such jurisdiction."  *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir. 1984).  "Illinois permits its courts to exercise personal jurisdiction up to the limits" of due process.  *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 697 (7th Cir. 2015).

of a physical office in the State are sufficient to meet *Daimler*'s exacting test (Compl. ¶ 11), but he is mistaken: such routine business contacts do not establish general jurisdiction in a state where the defendant is not headquartered or incorporated. *Daimler* cautioned that a defendant may be deemed "at home" in a jurisdiction *other* than its state of incorporation and principal place of business only in a truly "exceptional case"—*e.g.*, when its *de facto* principal place of business and its formal headquarters are in different jurisdictions. *Daimler*, 134 S. Ct. at 755–58 & n.8 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). Indeed, even a "substantial, continuous, and systematic course of business" is not enough to render a defendant at home in a forum, because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 761–62 & n.20 (quotation marks omitted). Plaintiff does not—because he cannot—allege that such "exceptional" circumstances exist here.

### B. Plaintiff Has Failed To Establish Specific Personal Jurisdiction.

Facebook is likewise not subject to specific jurisdiction in this case. For the exercise of specific jurisdiction to comport with due process, the plaintiff must establish a sufficient "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). This "relationship" requires not only that the defendant have sufficient contacts with the forum, but also that the plaintiff's suit arise out of the defendant's conduct in the forum. "Crucially, not just any contacts will do"; rather, "'the defendant's *suit-related* conduct must create a substantial connection with the forum State.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). Plaintiff has not made that showing; his conclusory assertion that his alleged injuries "arise from . . . Facebook's activities in Illinois" (Compl. ¶ 10) is unsupported by any "specific facts" (*Cook*, 1988 WL 139258, at *1) and cannot withstand scrutiny.

7

The fact that plaintiff resides in Illinois does not establish specific jurisdiction for two reasons. First, specific jurisdiction does not turn on the plaintiff's residence; it focuses on the "*defendant's* contacts with the forum State." *Walden*, 134 S. Ct. at 1122 (emphasis added). Accordingly, the "mere fact that [the] defendant's conduct affected plaintiffs with connections to the forum State does not suffice." *Advanced Tactical*, 751 F.3d at 801 (alterations and quotation marks omitted). And second, even if a plaintiff's residence were relevant in a case arising from the relationship between the plaintiff and the defendant, it would still be irrelevant here: Facebook has done nothing to create a relationship with plaintiff, who alleges that he does *not* have a Facebook account and has *never* interacted with Facebook. Compl. ¶¶ 7, 28.

Plaintiff fares no better with the handful of contacts that he alleges Facebook *itself* created with Illinois. Facebook's registration to do business and its physical office in Illinois (Compl. ¶ 11) have nothing to do with the alleged events giving rise to this suit and thus cannot support specific jurisdiction. *See, e.g.*, *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 846 (7th Cir. 2002) (contacts "unrelated to the facts forming the basis for the lawsuit" do not bear upon specific jurisdiction); *Advanced Tactical*, 751 F.3d at 802.

Nor may this Court exercise specific jurisdiction based on plaintiff's allegation that Facebook "target[ed] its facial recognition technology to millions of its users who are residents of Illinois." Compl. ¶ 10. Again, plaintiff himself *does not use Facebook*, and he does not even allege that the unspecified individual who uploaded his photo to Facebook is an Illinois resident or uploaded the photo in Illinois. *See id.* ¶ 29. Accordingly, the availability of Tag Suggestions to *other* Illinois residents has no nexus to *this* suit.

More fundamentally, the fact that Facebook operates a global Internet-based service that can be accessed from Illinois—just as from all other states—does not constitute purposeful

"targeting" of Illinois residents; in fact, it does not count as a contact with Illinois at all.

Addressing this precise argument, the Seventh Circuit explained that under *Daimler* and *Walden*,

> the operation of an interactive website does not show that the *defendant* has
> formed a contact with the forum state. . . . [I]f having an interactive website were
> enough . . ., there is no limiting principle—a plaintiff could sue everywhere. Such
> a result would violate the principles on which *Walden* and *Daimler* rest. Having
> an "interactive website" (which hardly rules out anything in 2014) should not
> open a defendant up to personal jurisdiction in every spot on the planet where that
> interactive website is accessible. To hold otherwise would offend "traditional
> notions of fair play and substantial justice."

*Advanced Tactical*, 751 F.3d at 803. Thus, the fact that Facebook can be accessed and used by

Illinois residents is simply irrelevant to the jurisdictional analysis. *Id.* Because plaintiff has

failed to establish either general or specific personal jurisdiction, this suit must be dismissed.

## II.     THE BIPA DOES NOT APPLY TO THE TAG SUGGESTIONS FEATURE.

Plaintiff's claims fail for an independent reason: they are barred by the plain language of

the BIPA, which *expressly excludes* from the definitions of "biometric identifier" and "biometric

information" (i) photographs and (ii) any information derived from those photographs. The

BIPA's express legislative findings and history confirm that these broad exclusions were

deliberate: the General Assembly sought to regulate the use of biometric technology to facilitate

financial and other secure transactions, and wanted to make clear that other types and uses of

technology were not prohibited.

### A.     The Plain Language Of The BIPA Expressly Excludes From The Statute's Reach Photographs And Any Information Derived From Photographs.

In interpreting an Illinois statute, the "primary objective" is to "ascertain and give effect

to the intent of the General Assembly." *S. Illinoisian v. Ill. Dep't of Pub. Health*, 218 Ill. 2d 390,

415 (2006). That inquiry "begins with the plain language of the statute, which is the most

reliable indication of the legislature's objectives." *Id.* Courts must "view all provisions of an

enactment as a whole," with each provision considered "in light of [the] other relevant provisions

9

of the statute" rather than "in isolation." *Mich. Ave. Nat'l Bank v. Cnty. of Cook*, 191 Ill. 2d 493, 504 (2000). "[N]o part [should be] rendered meaningless or superfluous." *People v. Diggins*, 235 Ill. 2d 48, 54 (2009) (quotation marks omitted).

Plaintiff recognizes that the Tag Suggestions feature is based entirely on photos that people voluntarily upload to Facebook. *E.g.*, Compl. ¶¶ 5, 9–10, 20–24, 29–30, 45.[2] That fact bars his claim: the BIPA expressly excludes from its coverage both photographs and any information derived from photographs. A "biometric identifier" is "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry"; "*[b]iometric identifiers do not include . . . photographs*." 740 ILCS 14/10 (emphasis added).[3] "Biometric information" is limited to information "based on an individual's biometric identifier" and "*does not include information derived from items or procedures excluded under the definition of biometric identifiers*"—such as photographs. *Id.* (emphasis added). The complaint fails as a matter of law.

**B. Collecting Information From Photographs Does Not Constitute A "Scan Of Hand Or Face Geometry" Within The Meaning Of The BIPA.**

Ignoring the BIPA's clear exclusions of photographs and information derived from them, plaintiff alleges that "information collected about the geometry of the face"—no matter the source—is a "scan of hand or face geometry" and thus falls within the definition of "biometric

---

[2] *See, e.g.*, Compl. ¶ 5 (Tag Suggestions uses "sophisticated facial recognition technology that extracts and analyzes data" from "photos uploaded by [Facebook's] users"); *id.* ¶ 22 ("Facebook's proprietary facial recognition technology scans every user-uploaded photo for faces [and] extracts geometric data"); *id.* ¶ 24 ("when a Facebook user uploads a new photo, Facebook's sophisticated facial recognition technology creates a template for each face depicted therein"); *id.* ¶ 30 ("Upon upload of Plaintiff's photograph, Facebook automatically scanned and analyzed Plaintiff's face"); *id.* ¶ 45 (Plaintiff and the putative class members had their "facial geometries extracted from uploaded digital photographs").

[3] Tellingly, plaintiff avoids the BIPA's definition of "biometric identifier," instead preferring his own definition: that "[a] 'biometric identifier' is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and 'face geometry,' among others." Compl. ¶ 1 n.1. That manufactured definition cannot be squared with the statutory text.

identifier." Compl. ¶ 17 n.6; *see also, e.g., id.* ¶¶ 5, 22–24, 30, 45. That contention is wrong.

### 1. Liability Under The BIPA Attaches Only To Biometric Identifiers And Information Derived From Them.

Plaintiff's approach ignores the structure of the statute: liability attaches under the BIPA only if the *source* of the information qualifies as a "biometric identifier." 740 ILCS 14/10. As we have just shown, photographs do not qualify.

Nor can the application of facial-recognition technology transform a photograph into a biometric identifier. The BIPA has a separate section that specifically addresses the application of technology to data that a party has collected: the provision on "biometric information," which is defined as information "based on an individual's biometric identifier" that is "used to identify an individual." 740 ILCS 14/10. If data "extracted" from the analysis of photographs (Compl. ¶¶ 22, 30, 45) were to be covered by the BIPA, it would be covered under the rubric of "biometric information." But it is not: the statute explicitly excludes from the definition of "biometric information" all "information derived from" the "items or procedures" that are excluded from the meaning of "biometric identifier," including "photographs." 740 ILCS 14/10.

The across-the-board exclusion of photographs and information derived from them would be rendered meaningless if the statute were interpreted to cover data derived from the scan of a photograph. *See People v. Trainor*, 196 Ill. 2d 318, 332 (2001) (the words of a statute "must be read in conjunction with one another and their language so construed as to make them harmonious and consistent," rather than "in a fashion that would render other words or phrases meaningless, redundant, or superfluous"). It would make no sense for the legislature to expressly exclude (1) photographs from the definition of "biometric identifier" and (2) information derived from photographs from the definition of "biometric information"—only to turn around and regulate information derived from photographs under a different label.

### 2.    The Phrase "Scan Of Hand Or Face Geography" Describes An In-Person, Physical Scan.

Plaintiff's theory cannot be squared with the very statutory phrase on which he relies:  a "*scan* of hand or face geometry."  740 ILCS 14/10 (emphasis added).  Read in context, that term plainly means an *in-person* scan of a person's *actual* hand or face (which would typically occur for verification or security purposes).  The meaning of the word "scan" is "'narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated.'"  *Commodity Futures Trading Comm'n v. Worth Bullion Grp.*, 717 F.3d 545, 550 (7th Cir. 2013) (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)).  The purpose of this doctrine is "'to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words' and 'to avoid the giving of unintended breadth to a legislative act.'"  *People v. Qualls*, 365 Ill. App. 3d 1015, 1020 (2006) (citation omitted).  That is precisely what plaintiff seeks to do here by claiming that a scan of a photograph—as opposed to a hand or a face—is covered by the BIPA.

The "neighboring words" in the definition of "biometric identifier"—"retina or iris scan, fingerprint, [or] voiceprint" (740 ILCS 14/10)—all describe the product of a common physical, in-person process for obtaining information about an individual that can then be used for authenticating a financial or other sensitive transaction or for accessing a secure area.  Retailers and banks often authenticate financial transactions by scanning a person's finger or hand to verify his or her identity.  In lieu of using identification cards, key fobs, or passcodes, businesses often verify an individual's identity by scanning his or her finger, hand, eye, face, or voice.[4]

---

[4]    *See generally* Nat'l Sci. and Tech. Council, Subcomm. on Biometrics, *Hand Geometry*, at 3 (Aug. 7, 2006), http://www.biometrics.gov/documents/handgeometry.pdf (last accessed Nov. 17, 2015) ("Hand geometry recognition systems are widely used for applications in physical access, attendance tracking, and personal verification.").

Just as a "retina or iris scan" requires putting one's eye up to a console for examination and verification, so too must a "scan of hand or face geometry" require a person to present his or her hand or face itself at a console or other type of scanner, such as the ones now widely used by the government at airports. *See generally* U.S. Customs and Border Protection, *Global Entry*, http://www.cbp.gov/travel/trusted-traveler-programs/global-entry (last accessed Nov. 17, 2015) (qualifying travelers may "enter the [U.S.] through automated kiosks," a process which involves "plac[ing] their fingerprints on the scanner for fingerprint verification"). That is because the word "scan" must be construed consistently throughout the statute. When "the same . . . words or phrases appear in different parts of the same statute[,] they will be given a generally accepted and consistent meaning." *Maksym v. Bd. of Election Comm'rs*, 242 Ill. 2d 303, 322 (2011) (citation omitted). The BIPA does not apply to photographs uploaded to Facebook's platform because the pictures did not result from in-person scans of an individual's face itself.

### 3. Plaintiff's Argument Cannot Be Squared With The Legislative Findings And History.

This Court need not consider the legislative findings or history because the statutory text is unambiguous. *Mich. Ave. Nat'l Bank*, 191 Ill. 2d at 504. But these sources confirm that the BIPA does not apply to Tag Suggestions. The findings underscore that the statute extends only to regulating the use of biometric identifiers to "streamline[] financial transactions and security screenings." 740 ILCS 14/5(a). The General Assembly was concerned with the substitution of biometric identifiers for "other unique identifiers that are used to access finances or other sensitive information," such as "social security numbers." *Id.* 14/5(c). Thus, it sought to regulate that substitution to prevent Illinois residents from "withdraw[ing] from biometric-facilitated transactions" and to ensure that they are not "deterred from partaking" in such transactions by a "heightened risk for identity theft." *Id.* 14/5(c), (e). As an example, the

13

legislature cited "finger-scan technologies at grocery stores, gas stations, and school cafeterias." *Id.* 14/5(b). The notion that the legislature intended the BIPA to apply to a very different set of circumstances—scanning photos uploaded to online services to assist people in tagging their friends—receives no support from the findings and statements of intent. *See, e.g.*, *Skokie Castings, Inc. v. Ill. Ins. Guar. Fund*, 2013 IL 113873, ¶ 28 (Ill. Oct. 18, 2013) ("Legislative intent may . . . be ascertained by considering the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.").

The legislative history further contradicts plaintiff's reading of the BIPA. The definitions of "biometric identifier" and "biometric information" were sharply narrowed as the bill worked its way towards passage. The first version introduced in the Illinois Senate defined "biometric identifier" and "biometric information" broadly (though even then, photographs were excluded):

> "Biometric identifier" means *any indelible personal physical characteristic* which can be used to uniquely identify an individual or pinpoint an individual at a particular place at a particular time. Examples of biometric identifiers *include, but are not limited to*, iris or retinal scans, fingerprints, voiceprints, and *records* of hand or facial geometry. Biometric identifiers do not include writing samples, written signature[s], and photographs.

> "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.

Senate Bill 2400, § 10 (Feb. 14, 2008) (emphases added).

A later version of the bill in the Senate changed the phrase "records of hand or facial geometry" to the broader "records or scans of hand geometry, facial geometry, or *facial recognition*." Senate Amendment to Senate Bill 2400, § 10 (Apr. 11, 2008) (emphasis added). But that expansion was *rejected*. The Illinois House of Representatives replaced the Senate's definition of "biometric identifier" with the much narrower definition used in the statute as enacted. *See* House Amendment to Senate Bill 2400, § 10 (May 28, 2008).

14

The House thus (a) dropped any reference to "facial recognition"; (b) narrowed the definition of "biometric identifier" from an open-ended set of "physical characteristic[s]" to a narrowly cabined list of enumerated sources; and (c) removed the broad term "records" and replaced it with "scan." The Senate unanimously concurred in these changes. Ill. S. J., 2008 Reg. Sess. No. 167, at 60–61 (July 10, 2008). In other words, the Illinois General Assembly consciously *declined* to regulate all possible forms of facial recognition technology.

A floor statement by the chief sponsor of the bill confirms the legislature's narrow focus on how businesses collect and store information from biometric-facilitated financial transactions:

> This Bill is especially important because one of the companies that has been piloted in Illinois, Pay By Touch, is the largest *fingerprint scan system* in Illinois and they have recently filed for bankruptcy and wholly stopped providing verification services in March of 2008. This pullout leaves thousands of customers from Albertson's, Cub Foods, Farm Fresh, Jewel Osco, Shell, and Sunflower Market wondering what will become of their biometric and financial data. The California Bankruptcy Court recently approved the sale of their Pay By Touch database. So, we are in very serious need of protections for the citizens of Illinois when it comes to biometric information.

IL H.R. Tran. 2008 Reg. Sess. No. 276, at 249 (May 30, 2008) (emphasis added).

In sum, the complaint rests on an erroneous construction of the BIPA that is barred by the plain language of the statute and cannot be squared with either the General Assembly's express findings or the statute's legislative history. Because plaintiff cannot cure these defects, the Court should dismiss his complaint with prejudice. *See, e.g.*, *Ind. Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003).

## CONCLUSION

The complaint should be dismissed with prejudice.

Dated:  November 20, 2015                    Respectfully Submitted,

By:  */s/ Lauren R. Goldman*
Lauren R. Goldman
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

Vincent Connelly
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
vconnelly@mayerbrown.com
mprovance@mayerbrown.com

Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
aparasharami@mayerbrown.com

John Nadolenco (*pro hac vice* pending)
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

*Counsel for Defendant Facebook, Inc.*